IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DAVID JOSEPH SANCHEZ, JR.,

     Petitioner,

v.                                  Civil No. 3:13CV400

MARIE VARGO,

     Respondent.

### MEMORANDUM OPINION

David Joseph Sanchez, Jr., a Virginia inmate proceeding by counsel, submitted this 28 U.S.C. § 2254 petition ("§ 2254 Petition"). Sanchez argues that his life sentence without possibility of parole violates the Eighth Amendment[1] under Miller v. Alabama, 132 S. Ct. 2455 (2012) and that Miller announced a new, previously unavailable rule of constitutional law retroactive to cases on collateral review, thus providing a belated commencement of the limitation period under 28 U.S.C. § 2244(d)(1)(C). Marie Vargo has moved to dismiss. Sanchez has replied. The matter is ripe for disposition. Because the statute of limitations bars the § 2254 Petition, the Motion to Dismiss will be granted.

---

[1] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

## I.   PROCEDURAL HISTORY

The Circuit Court of the County of Chesterfield ("Circuit Court") convicted Sanchez of capital murder, attempted robbery, use of a firearm in the commission of a murder, and use of a firearm in the commission of an attempted robbery, committed at the age of seventeen, and sentenced him to life plus eighteen years in prison. Commonwealth v. Sanchez, Nos. CR99F00507-01 through -04, at 1 (Va. Cir. Ct. Dec. 16, 2009).[2] The Court of Appeals of Virginia denied Sanchez's petition for appeal. Sanchez v. Commonwealth, No. 0047-00-2, at 1 (Va. Ct. App. June 23, 2000). On January 5, 2001, the Supreme Court of Virginia refused Sanchez's petition for appeal. Sanchez v. Commonwealth, No. 001757, at 1 (Va. Jan. 5, 2011). Sanchez filed no other challenges to his conviction and sentence.

On June 24, 2013, Sanchez filed this § 2254 Petition, arguing that his life sentence without the possibility of parole

---

[2] Sanchez notes that, at the time of his conviction, under Virginia state law, the Circuit Court was required to either impose a sentence of death or a sentence of life in prison without parole. (§ 2254 Pet. 1); see Va. Code Ann. § 18.2-10(a) (West 1999). The defense offered abundant mitigating evidence during the two-day sentencing to persuade the jury to impose a sentence of life without parole instead of death. (See § 2254 Pet. 5-7 (citations omitted).) The mitigating evidence presented during sentencing persuaded the jury not to impose the death penalty. Nevertheless, under Virginia's sentencing scheme, regardless of the mitigating evidence submitted, the Circuit Court could not sentence Sanchez to any sentence less severe than life without parole. (Id. at 1.)

violates the Eighth Amendment under <u>Miller v. Alabama</u>, 132 S. Ct. 2455 (2012).

## II. STATUTE OF LIMITATIONS

Vargo contends that the federal statute of limitations bars Sanchez's claims. Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") amended 28 U.S.C. § 2244 to establish a one-year period of limitation for the filing of a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. Specifically, 28 U.S.C. § 2244(d) now reads:

1. A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> **(D)**   the date on which the factual predicate
> of the claim or claims presented could
> have been discovered through the
> exercise of due diligence.
>
> **2.**   The time during which a properly filed
> application for State post-conviction or other
> collateral review with respect to the pertinent
> judgment or claim is pending shall not be counted
> toward any period of limitation under this
> subsection.

28 U.S.C. § 2244(d). Sanchez's conviction became final for the purposes of § 2244(d) on April 5, 2001, the day upon which the time expired for Sanchez to seek certiorari to the United States Supreme Court. Hill v. Braxton, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired . . . ." (citing 28 U.S.C. § 2244(d)(1)(A))); see Sup. Ct. R. 13(1) (requiring a petition for certiorari to be filed within ninety days of entry of judgment by state court of last resort or of the order denying discretionary review). Thus, under § 2244(d)(1)(A), Sanchez had until April 5, 2002 to file his § 2254 Petition. Sanchez filed his § 2254 Petition more than ten years after that date. Thus, the statute of limitations bars Sanchez's § 2254 Petition unless Sanchez demonstrates entitlement to a belated commencement of the limitation period under § 2244(d)(1)(B)-(D) or equitable tolling.

4

Sanchez does not argue that that is a case of equitable tolling. Nor does the record support application of the doctrine. Sanchez only argues entitlement to a belated commencement of the limitations period under § 2244(d)(1)(C) based upon Miller v. Alabama, 132 S. Ct. 2455 (2012) which was decided on June 25, 2012. For Miller to make Sanchez's petition timely, the "right" in Miller must "ha[ve] been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." § 2244(d)(1)(C). As discussed below, although the right in Miller is new, it is not retroactively applicable to cases on collateral review.

### III. THE NEW RULE DOCTRINE

#### A. Demand For Relief Under Miller

In Miller v. Alabama, the Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 132 S. Ct. 2455, 2469 (2012) (citation omitted).[3] Sanchez argues that his § 2254 Petition satisfies the conditions of § 2244(d)(1)(C) because Miller recognized a new right which applies retroactively to his § 2254 Petition.

---

[3] In reaching that conclusion the Supreme Court noted, that "[b]ecause that holding is sufficient to decide these cases, we do not consider [the] alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles . . . ." Miller, 132 S. Ct. 2469.

The Court looks to Teague v. Lane, 489 U.S. 288 (1989) to determine whether Miller entitles Sanchez to a belated commencement under § 2244(d)(1)(C).   See United States v. Powell, 691 F.3d 554, 557 (4th Cir. 2012).   Teague provides that new rules of constitutional criminal procedure generally are not applicable to cases on collateral review.   Teague, 489 U.S. at 310.   This principle protects the societal interest in the finality of convictions.   Id.   "'No one, not criminal defendants, not the judicial system, not society as a whole is benefitted by a judgment providing that a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation.'"   Id. at 309 (quoting Mackey v. United States, 401 U.S. 667, 691 (1971) (Harlan, J., concurring in judgments in part and dissenting in part)).

## B.   Application Of The New Rule Doctrine For Cases On Collateral Review

The Supreme Court has prescribed a three-step process for determining whether a constitutional rule of criminal procedure applies to a case on collateral review.   Beard v. Banks, 542 U.S. 406, 411 (2004).

> First, the court must determine when the defendant's conviction became final.   Second, it must ascertain the legal landscape as it then existed, and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule.   That is, the court must decide whether the rule is actually

6

new.   Finally, if the rule is new, the court must
consider whether it falls within either of the two
exceptions to nonretroactivity.

Id. (citations omitted) (internal quotation marks omitted).

## IV.   ANALYSIS UNDER NEW RULE DOCTRINE

### A.   Sanchez's Conviction Became Final On April 5, 2001

The first step of the inquiry requires no extended
analysis.   Sanchez's conviction became final on April 5, 2001,
the date on which the time expired for Sanchez to file a writ of
certiorari in the Supreme Court of the United States.   See
Caspari v. Bohlen, 510 U.S. 383, 390 (1994).

### B.   Miller Announced A New Rule

The next step in the analysis requires a determination of
whether Miller announced a new rule when measured against
precedent as of April 5, 2001.   The Supreme Court has explained
that "'a case announces a new rule if the result was not
dictated by precedent existing at the time the defendant's
conviction became final.'"   Chaidez v. United States, 133 S. Ct.
1103, 1107 (2013) (quoting Teague v. Lane, 489 U.S. 288, 301
(1989)).   "[A] holding is not so dictated . . . unless it would
have been 'apparent to all reasonable jurists.'"   Id. (quoting
Lambrix v. Singletary, 520 U.S. 518, 527-28 (1997)).

The Court need not extensively survey the legal landscape
at the time of Sanchez's conviction, as both Vargo and Sanchez

7

agree that the rule in Miller is "new" as defined in Teague. (See Mem. Supp. Mot. Dismiss 6.) Moreover, there is general judicial agreement that Miller established a new rule of constitutional law because it "held for the first time that the 'Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.'" In re Morgan, 713 F.3d 1365, 1366-67 (11th Cir. 2013) reh'g en banc denied, 717 F.3d 1186, 1187 (11th Cir. 2013) (quoting Miller, 132 S. Ct. at 2469); see, e.g., Craig v. Cain, No. 12-30035, 2013 WL 69128, at *1 (5th Cir. Jan. 4, 2013); Martin v. Symmes, No. 10-cv-4753 (SRN/TNL), 2013 WL 5653447, at *15 (D. Minn. Oct. 15, 2013).[4]

Additionally, one need look no further than the disagreement between the justices in Miller to find support for the proposition that the rule announced in Miller was subject to debate amongst reasonable jurists. See United States v. Claiborne, 388 F. Supp. 2d 676, 687 (E.D. Va. 2005) (citing Beard, 542 U.S. at 416 & n.5; Sawyer v. Smith, 497 U.S. 227, 234 (1990) (describing a new rule as a result "over which reasonable jurists may disagree")). In Miller, four justices rejected the notion that the Eighth Amendment prohibited a sentencing scheme

---

[4] Other courts have assumed without deciding that Miller announced a new rule. See Contreras v. Davis, No. 1:13cv722 (JCC), 2013 WL 6504654, at *4 (E.D. Va. Dec. 11, 2013); Johnson v. Ponton, No. 3:13-CV-404, 2013 WL 5663068, at *2 (E.D. Va. Oct. 16, 2013).

that mandates life in prison without possibility of parole for juvenile offenders. 132 U.S. at 2477 (Roberts, C.J., dissenting).

For the foregoing reasons, it seems rather clear that _Miller_ announced a new rule.

### C. The New Rule Announced In _Miller_ Fails To Fall Within Either Of The Exceptions to Nonretroactivity

Given the societal interest in the finality of convictions, under _Teague_, "new rules of constitutional law are generally 'not . . . applicable to those cases which have become final before the new rules are announced.'" _United States v. Mathur_, 685 F.3d 396, 399 (4th Cir. 2012) (omission in original) (quoting _Teague_, 489 U.S. at 310). _Teague_ recognizes two narrow exceptions to the general rule of nonretroactivity. _Id._ (citations omitted). First, a new rule applies retroactively if it is a substantive rule. _See Whorton v. Bockting_, 549 U.S. 406, 416 (2007). A substantive rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," _Teague_, 489 U.S. at 307 (citation omitted) (internal quotation marks omitted), "or addresses a 'substantive categorical guarantee[e] accorded by the Constitution,' such as a rule 'prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" _Saffle v. Parks_, 494 U.S. 484, 494-

95 (1990) (alteration in original) (quoting Penry v. Lynaugh, 492 U.S. 302, 329 (1989), overruled on other grounds by Atkins v. Virginia, 536 U.S. 304 (2002)).   Second, a rule may be applied retroactively if it constitutes a "watershed rule[ ] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Beard, 542 U.S. at 417 (citation omitted) (internal quotation marks omitted).   As discussed below, Miller fails to fall within either of these exceptions to nonretroactivity.

### 1.   No Substantive Rule

Sanchez first argues that Miller announced a substantive rule and thus, applies retroactively to cases on collateral review.   Sanchez contends that Miller is a substantive rule because it prohibits a certain category of punishment for a class of defendants because of their status or offense.   Sanchez argues that, because courts have found that Graham v. Florida, 560 U.S. 48 (2010) announced a new rule of constitutional law retroactively applicable to cases on collateral review, see, e.g., In re Sparks, 657 F.3d 258, 262 (2011), that determination dictates the same treatment for Miller. (§ 2254 Pet. 14.)   As explained below, this argument is not persuasive.[5]

_____

[5] Unlike Graham, who was convicted of a nonhomicide robbery offense he committed as a juvenile, Sanchez, like Miller, was convicted of a homicide offense.

10

The United States Court of Appeals for the Fifth Circuit, in discussing the retroactivity of Miller, aptly explained when the first Teague exception applies. See Craig, 2013 WL 69128, at *1. In surveying its prior cases conducting a Teague analysis, the Fifth Circuit explained that the exception for a substantive rule

> appears to only apply when a new rule completely removes a particular punishment from the list of punishments that can be constitutionally imposed on a class of defendants, not when a rule addresses considerations for determining a sentence. For example, we have used Teague's first exception in applying prohibitions on the execution of defendants who are mentally handicapped or juveniles, and sentences of life imprisonment without parole for juveniles convicted of nonhomicide offenses. Bell v. Cockrell, 310 F.3d 330, 332 (5th Cir. 2002) (retroactively applying Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002)); In re Sparks, 657 F.3d 258, 262 (5th Cir. 2011) (citing Arroyo v. Dretke, 362 F. Supp. 2d 859, 883 (W.D. Tex. 2005)[; ]Roper v. Simmons, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)[; and, retroactively applying ]Graham v. [Florida], --- U.S. ----, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010)[ in granting permission to file a successive habeas action]).
> By contrast, the Supreme Court has denied retroactive application of prohibitions against weighing invalid aggravating circumstances in certain circumstances, imposition of a death sentence by a jury that has been led to believe responsibility for determining the appropriateness of a death sentence rests elsewhere, and capital-sentencing schemes that foreclose a jury from considering all mitigating evidence. Lambrix v. Singletary, 520 U.S. 518, 539, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997) (foreclosing retroactive application of Espinosa v. Florida, 505 U.S. 1079, 112 S. Ct. 2926, 120 L. Ed. 2d 854 (1992)); Sawyer v. Smith, 472 U.S. 227, 241 (1990) (Caldwell v. Mississippi, 472 U.S. 320, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985)); Beard v. Banks, 542 U.S. 406, 417, 124

S. Ct. 2504, 159 L. Ed. 2d 494 (2004) (Mills v. Maryland, 486 U.S. 367, 108 S. Ct. 1860, 100 L. Ed. 2d 384 (1988)); see also Saffle v. Parks, 494 U.S. 484, 495, 110 S. Ct. 1257, 108 L. Ed. 2d 415 (1990) (holding that a new rule prohibiting an antisympathy jury instruction did not fall under Teague's first exception).

Id. at *1-2 (alterations added).[6]

In essence, whether Miller announced a substantive rule "turns on whether Miller categorically[7] barred the imposition of mandatory life sentences on juveniles or, rather, barred courts from imposing life sentences on juveniles without exercising some measure of discretion." Johnson v. Ponton, No.

---

[6] The Court has attempted to correct citation errors in the Craig decision.

[7] In contrast to the language in Miller, the Supreme Court's language in Graham v. Florida, 560 U.S. 48 (2010), clearly indicates the announcement of a substantive rule. In Graham, the Supreme Court reviewed "whether the Constitution permits a juvenile offender to be sentenced to life in prison without parole for a nonhomicide crime." 560 U.S. 52-53. The Court held

> that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole. This clear line is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment. Because "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood," those who were below that age when the offense was committed may not be sentenced to life without parole for a nonhomicide crime.

Id. at 74-75 (alteration in original) (quoting Roper v. Simmons, 543 U.S. 551, 574 (2005)). The Supreme Court further explained that "[c]ategorical rules tend to be imperfect, but one is necessary here." Id. at 75.

3:13-CV-404, 2013 WL 5663068, at *5 (E.D. Va. Oct. 16, 2013). The plain language of Miller indicates that the Supreme Court intended Miller to be a procedural, rather than a substantive rule. Id.

In Miller, the Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders." 132 S. Ct. 2469 (emphasis added) (citation omitted). This holding, however, did not absolutely prohibit the imposition of a sentence of life imprisonment without the possibility of parole on minors. Thus, by the plain language of the Supreme Court's decision, Miller fails to satisfy the first Teague exception to nonretroactivity "because it does not place a class of conduct (homicide by a juvenile) beyond the power of the state to proscribe, nor does it prohibit a category of punishment (life in prison without parole) for a class of defendants (juveniles) based on their offense (homicide)." Martin, 2013 WL 5653447, at *16.

In Miller, the Supreme Court explained that its decision was driven by "the confluence of [ ] two lines of precedent," including Graham, and similar cases categorically banning certain sentencing practices. Miller, 132 S. Ct. at 2463-64. However, the Court then expressly distinguished Miller from Graham, stating that,

> [o]ur decision <u>does not categorically bar a penalty</u>
> <u>for a class of offenders or type of crime</u>—as, for
> example, we did in <u>Roper</u> or <u>Graham</u>.   <u>Instead</u>, it
> <u>mandates only</u> that a sentence follow a certain
> <u>process</u>—considering an offender's youth and attendant
> characteristics—before imposing a particular penalty.

<u>Miller</u>, 132 S. Ct. at 2471 (emphasis added).   Thus, instead of
categorically barring all sentences of life imprisonment for
juveniles, the plain language of <u>Miller</u> only prohibits a
sentencing scheme in which a particular sentence is mandatory,
rather than the result of a process that takes into account the
mitigating circumstances of youth before imposing such a
sentence.   See <u>id.</u> at 2471; <u>Craig</u>, 2013 WL 69128, at *2; <u>Martin</u>,
2013 WL 5653447, at *16.

Sanchez argues that, "[b]y categorically prohibiting the
mandatory imposition of a sentence of life <u>without</u> the
possibility of parole, <u>Miller</u> necessarily expands the range of
possible sentences to include life <u>with</u> the possibility of
parole." (§ 2254 Pet. 13.)   The Eleventh Circuit was confronted
with a similar argument and rejected it explaining that:

> The Supreme Court has held that a "new rule[ ]
> prohibiting a certain category of punishment for a
> class of defendants because of their status or
> offense," <u>Penry</u>, 492 U.S. at 330 . . . is retroactive,
> but that rule applies only where a class cannot be
> subjected to a punishment "regardless of the
> procedures followed," <u>id.</u>   "In contrast, rules that
> regulate only the manner of determining the
> defendant's culpability are procedural." <u>Schriro v.</u>
> <u>Summerlin</u>, 542 U.S. 348, 354 (2004)). . . .   A new
> rule is substantive when that rule places an entire
> class beyond the power of the government to impose a

14

certain punishment regardless of the procedure
followed, not when the rule expands the range of
possible sentences.

In re Morgan, 713 F.3d at 1368 (parallel citation omitted); see
also Johnson, 2013 WL 5663068, at *5.

Because Miller "adds a procedural safeguard that must be
followed prior to imposition of [a life] sentence," its rule is
procedural and not substantive. Johnson, 2013 WL 5663068, at *5
(citing Miller, 132 S. Ct. 2464); see In re Morgan, 713 F.3d at
1368. Accordingly, Miller does not fall within Teague's first
exception to nonretroactivity.

### 2. No Watershed Rule

Because Miller announced a new rule, and because it is
clear that the rule is procedural and not substantive, that rule
cannot be applied retroactively in this collateral attack unless
it is a "watershed rule[ ] of criminal procedure implicating the
fundamental fairness and accuracy of the criminal
proceeding . . . ." Beard, 542 U.S. at 417 (citation omitted)
(internal quotation marks omitted). The Supreme Court
repeatedly has emphasized the extremely limited scope of the
second Teague exception. See id. This second exception

> is clearly meant to apply only to a small core of
> rules requiring observance of those procedures
> that . . . are implicit in the concept of ordered
> liberty. And, because any qualifying rule would be so
> central to an accurate determination of innocence or
> guilt [that it is] unlikely that many such components
> of basic due process have yet to emerge, it should

come as no surprise that we have yet to find a new
rule that falls under the second Teague exception.

Id. (alteration and omission in original) (citations omitted)
(internal quotation marks omitted).   "In providing guidance as
to what might fall within this exception, [the Supreme Court
has] repeatedly referred to the rule of Gideon v. Wainwright [ ]
(right to counsel), and only to this rule."   Id. (citations
omitted).   Since Teague, the Supreme Court has "rejected every
claim that a new rule satisfied the requirements for watershed
status."   Whorton, 549 U.S. at 418 (emphasis added) (citations
omitted).   To qualify as a watershed rule, a new rule must meet
two requirements.   "First, the rule must be necessary to prevent
an   impermissibly   large   risk   of   an   inaccurate   conviction.
Second, the rule must alter our understanding of the bedrock
procedural elements essential to the fairness of a proceeding."
Whorton, 549 U.S. at 418 (citations omitted) (internal quotation
marks omitted).

        Sanchez argues that the rule in Miller satisfies the first
requirement because "Miller's new rule prohibiting such a scheme
was . . . necessary to avoid the constitutionally impermissible
risk of imposing a disproportionate and inaccurate sentence" on
juveniles. (§ 2254 Pet. 16.)  Sanchez contends that Miller also
satisfies the second requirement because "the Court expressly
overturned   the   sentencing   schemes   of   twenty-nine   sovereign

jurisdictions" and "[s]uch a ruling 'alter[s] our understanding' of fair criminal proceedings for juveniles by striking down sentencing schemes across the country." (Id. (last alteration in original) (quoting Whorton, 549 U.S. at 418)). Sanchez argues that Miller amounts to a "watershed rule" because it is comparable to Gideon. That argument misses the mark.

In Gideon, "the Court held that counsel must be appointed for any indigent defendant charged with a felony." Whorton, 549 U.S. at 419. Gideon concluded that, "[w]hen a defendant wishes to be represented by counsel is denied representation, . . . the risk of an unreliable verdict is intolerably high." Whorton, 549 U.S. at 419 (citations omitted). The new rule announced in Gideon eliminated the "intolerably high" risk of an unreliable verdict. Whorton, 549 U.S. at 419 (citations omitted).

The rule in Miller is much more limited in scope, pertains to the sentencing phase of the proceeding, and the relationship of the rule announced in Miller "to the accuracy of the factfinding process is far less direct and profound." Whorton, 549 U.S. at 419. The Supreme Court "[has] not hesitated to hold that less sweeping and fundamental rules [applicable only to the sentencing phase of trial] do not fall within Teague's second exception." Beard, 542 U.S. at 418 (citing O'Dell v.

17

Netherland, 521 U.S. 151, 167 (1997); Sawyer v. Smith, 497 U.S. 227, 242-45 (1990)).[8]

Miller, unlike Gideon, effected an incremental change and affords a right to defendants in a limited class of cases.

_____

[8] In O'Dell v. Netherland, 521 U.S. 151 (1997), the Supreme Court held that a rule requiring that a capital defendant be permitted to inform his sentencing jury that he is parole-ineligible if the prosecution argues his future dangerousness was not a watershed rule because the rule applied to a "limited class of capital cases" and "hardly . . . altered[ed] our understanding of the bedrock procedural elements essential to the fairness of a proceeding." Id. at 167 (alteration in original)(citations omitted) (internal quotation marks omitted).
    In Sawyer v. Smith, 497 U.S. 227 (1990), the Supreme Court reviewed whether a "prosecutor's closing argument [to the jury] violated the Eighth Amendment . . . by diminishing the jury's sense of responsibility for the capital sentencing decision, in violation of our decision in Caldwell v. Mississippi, 472 U.S. 320 (1985). Sawyer, 497 U.S. at 232. Among other remarks, the prosecutor told the jury that:
        [Y]ou yourself will not be sentencing [Petitioner] to the electric chair . . . .

                . . . .

        Don't feel like you are the one, because it is very easy for defense lawyers to try and make each one of you feel like you are pulling the switch. That is not so. . . . and if you are wrong in your decision believe me . . . there will be others who will be behind you to either agree with you or to say you are wrong . . . .
Id. at 231-32. The Supreme Court found that, the rule in Caldwell, that forbade "imposition of a death sentence by a sentencer that has been led to the false belief that the responsibility for determining the appropriateness of the defendant's capital sentence rests elsewhere," id. at 233 (citation omitted), despite enhancing the accuracy of capital sentencing, effected an incremental change only. Id. at 242-45. Thus, Caldwell failed to fall within the second Teague exception. Id. at 244-45. Accordingly, notwithstanding the prosecutor's improper comments, the Supreme Court refused to set aside the petitioner's death sentence.

Thus, the Court cannot "conclude that 'this systematic rule . . . is an 'absolute prerequisite to fundamental fairness.'" Beard, 542 U.S. at 419 (quoting Sawyer, 497 U.S. at 244); see Craig, 2013 WL 69128, at *2; Johnson, 2013 WL 5663068, at *6. For the foregoing reasons, Sanchez has failed to demonstrate that Miller falls within Teague's second exception.

### D.   No Implicit Holding of Retroactivity

Finally, Sanchez contends that the Supreme Court implicitly held that Miller retroactively applies to cases on collateral review because Miller, which was before the Supreme Court on direct appeal of his conviction and sentence, was consolidated with Jackson v. Hobbs, which was before the Court on collateral review from the Arkansas Supreme Court's denial of state habeas relief. See Miller, 132 S. Ct. at 2461-63. The Supreme Court remanded Jackson "for further proceedings not inconsistent with [its] opinion." Id. at 2475. Sanchez argues that, "'once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated.'" (§ 2254 Pet. 18 (quoting Teague, 489 U.S. at 300).) Thus, Sanchez concludes that the Miller rule must be applied retroactively to all cases on collateral review by virtue of its application to Jackson. (Id.) However, in Sanchez, the Respondent, the State of Arkansas, did not argue that Teague barred relief on collateral

19

review.   (§ 2254 Pet. 19.)   Therefore, Sanchez is not similarly situated to Jackson because here, Respondent has argued that Teague bars relief on collateral review.   While federal courts must take up a Teague analysis where necessary before addressing the merits, "'a federal court may, but need not, decline to apply Teague if the State does not argue it.'"   Frazer v. South Carolina, 430 F.3d 696, 704 n.3 (4th Cir. 2005) (quoting Caspari, 510 U.S. at 389).   Accordingly, in Miller, the "failure [of Arkansas] to address the matter in its opening briefs to [the Supreme C]ourt could provide adequate grounds to forego [the Teague] inquiry altogether."   Id.   (citations omitted). Thus, the Supreme Court's silence about Teague in Jackson does not indicate that the Court intended the rule in Miller to apply retroactively to cases on collateral review.   See Johnson, 2013 WL 5663068, at *4.

## V.   CONCLUSION

The Court agrees with the other courts that have addressed the issue, and concludes that the rule announced in Miller v. Alabama, 132 S. Ct. 2455 (2012) is not retroactively applicable to cases on collateral review.   See, e.g., Craig v. Cain, No. 12-30035, 2013 WL 69128, at *1 (5th Cir. 2013) (denying motion to reconsider denial of certificate of appealability because Miller failed to meet Teague v. Lane, 489 U.S. 288, 289

20

(1989) exceptions to nonretroactivity); Contreras v. Davis, No. 1:13cv722 (JCC), 2013 WL 6504654, at *3-4 (E.D. Va. Dec. 11, 2013) (holding in the alternative that § 2254 petition was untimely because Miller not retroactive to cases on collateral review); Johnson v. Ponton, No. 3:13-CV-404, 2013 WL 5663068, at *6 (E.D. Va. Oct. 16, 2013) (denying as untimely a § 2254 petition seeking belated commencement of statute of limitations under Miller); cf. In re Morgan, 713 F.3d 1365, 1366-67 (11th Cir. 2013) reh'g en banc denied, 717 F.3d 1186, 1187 (11th Cir. 2013) (denying authorization to file a successive habeas petition because new rule in Miller not made retroactive); Martin v. Symmes, No. 10-cv-4753 (SRN/TNL), 2013 WL 5653447, at *15 (D. Minn. Oct. 15, 2013).

Because Miller does not apply retroactively to cases on collateral review, Sanchez lacks entitlement to a belated commencement under § 2244(d)(1)(c). Thus, Sanchez's § 2254 Petition is untimely filed. Vargo's Motion to Dismiss (ECF No. 3) will granted and the § 2254 Petition will be dismissed.

The Clerk is directed to send a copy of this Memorandum Opinion to Sanchez and counsel of record.

It is so ORDERED.

/s/

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 2‍1, 2014